IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| ANGELA VANDER SCHAAF, | |
| Plaintiff, | No. 15-CV-4072-LTS |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

Plaintiff, Angela Vander Schaaf (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI (respectively) of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Claimant contends the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant time period. For the reasons that follow, I recommend the Court affirm the Commissioner's decision.

## I. PROCEDURAL HISTORY

Claimant applied for DIB and SSI on April 5, 2012. Doc. 12, ¶¶1-2; AR 206-19. The Commissioner denied claimant's application initially and upon reconsideration. Doc. 12, ¶¶4, 6; AR 114-18, 124-28. Claimant then requested a hearing before an Administrative Law Judge (ALJ). Doc. 12, ¶7; AR 135-36. On April 7, 2014, the ALJ conducted a hearing at which claimant and a vocational expert testified. Doc. 12, ¶8; AR 29-60. The ALJ issued a decision denying claimant's application on May 5, 2014.

Doc. 12, ¶9; AR 9-22. The ALJ found that claimant did not have an impairment of a severity that made her disabled, and found her residual functional capacity allowed her to perform unskilled work with some restrictions. AR 15-16.

On August 13, 2015, the Appeals Council denied claimant's request for review of the ALJ's decision. Doc. 12, ¶11; AR 1-4. The ALJ's decision stands as the final decision of the Commissioner. AR 1; 20 C.F.R. § 416.1481.

Claimant filed a complaint in this Court on September 3, 2015, seeking review of the Commissioner's decision. Doc. 3. This matter has been referred to a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for the filing of a report and recommended disposition. The parties have briefed the issues, and on April 20, 2016, the court deemed his case ready for decision. Doc. 18.

## II.    RELEVANT FACTS

Claimant was born in 1967, completed high school, has "some college" education, and was 44 years old at the time of the alleged onset of disability. AR 16, 20, 37. She has past relevant work as a cafeteria worker, custodian, and property management worker. AR 16, 230.

On August 22, 2011, claimant injured herself while working as a caretaker at a property management company. Doc. 12, ¶18; AR 230. Claimant alleges an onset date of disability of August 23, 2011. Doc. 12, ¶3; AR 14, 206. Since that date claimant received pay for babysitting a grandchild, but it did not rise to the level of substantial gainful work. AR 14. Claimant saw various medical treatment providers between October 2011 and March 2014 for back pain and depression. Doc. 12, ¶¶19-52. She had back surgery on March 18, 2014. Doc. 12, ¶53.

On April 7, 2014, claimant testified that she did not feel like she could do her past work or other sedentary work because "I have a difficult time like sitting too long or

standing too long." Doc. 12, ¶14. "Too long" to claimant meant 20 minutes sitting and 15 minutes standing. *Id*.

At the hearing, the ALJ asked the vocational expert to assume a person with the following hypothetical limitations: "unskilled, sedentary work . . . mean[ing] not lift[ing] or carry[ing] over 10 pounds occasionally or frequently, a job where the person is not reqired to be on their feet standing or walking more than two hours in an eight hour day but could sit for six hours in an eight hour day, could occasionally do postural activities but avoid working on ladders or jobs which require kneeling, crouching and crawling and . . . [or] work[ing] with right shoulder more above the shoulder level and retain repetitive unskilled, SVP 1, 2." Doc. 12, ¶15; AR 56-57. The vocational expert opined there were several examples of job positions available with these limitations. Doc. 12, ¶16; AR 57-58. If, however, the hypothetical person would also "need to lie down periodically throughout the day on an unscheduled basis more than two times," then the vocational expert opined the person would not be able to maintain gainful employment. Doc. 12, ¶17; AR 58.

### III. THE ALJ'S FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 30, 2016.

2. The claimant has not engaged in substantial gainful activity since August 23, 2011, the alleged onset date. 20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*

3. The claimant has the following severe impairments: Degenerative disc disease with recent microdiskectomy (March 18, 2014). Mental—depressive disorder and a history of alcohol dependence with claimed sobriety since September 2008. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

3

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

5. The claimant has the residual functional capacity to occasionally and frequently lift and carry up to 10 pounds. The claimant cannot be required to be on her feet more than 2 out of 8 hours. The claimant can sit for 6 out of 8 hours. The claimant can occasionally perform postural work. The claimant cannot perform work on ladders and needs to avoid kneeling, crouching, crawling, and overhead reaching with the right arm. The claimant can perform unskilled, svp 1-2, routine, repetitive work.

6. The claimant is unable to perform any past relevant work. Exhibit 18E; 20 C.F.R. §§ 404.1565 and 416.965.

7. The claimant was born on June 4, 1967, and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. 20 C.F.R. §§ 404.1563 and 416.964.

8. The claimant has at least a high school education and is able to communicate in English. 20 C.F.R. § 404.1564.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. *See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 23, 2011, through the date of this decision. 20 C.F.R. §§ 404.1520(g) and 416.920(g).

AR 14-22.

## IV. *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. An individual has a disability when, due to her physical or mental impairments, she "is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. § 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see also Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §

416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit. 20 C.F.R. § 416.972(a)-(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a); *see also* 20 C.F.R. §§ 416.920(c), 416.921(a); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine its medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of her past relevant work. If the claimant cannot do her past relevant work, then she is considered disabled. 20

C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work the claimant has done within the past 15 years of her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.R.F. § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *See* 20 C.F.R. § 416.945(a)(1). The RFC is based on all relevant medical and other evidence. 20 C.F.R. § 416.945(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 416.912(f), 416.920(a)(4)(v). The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v). At step five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. 20 C.F.R. § 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use

is a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. § 416.935.

## V. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support

is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## VI. DISCUSSION

Claimant argues the ALJ's decision is flawed because she alleges substantial evidence on the record as a whole does not support the ALJ's decision. Claimant argues the ALJ improperly discounted her credibility and erred in her evaluation of the medical evidence. Doc. 15, at 1-2. I address both of these arguments in turn.

### A. The ALJ's Credibility Assessment

Claimant first argues that the ALJ improperly evaluated her subjective complaints and considered her not fully credible. When determining residual functional capacity, an ALJ must evaluate the claimant's credibility regarding her subjective complaints. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). In doing so, an ALJ must consider objective medical evidence and any evidence relating to a claimant's daily activities; duration, frequency, and intensity of pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions. *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ does not have to discuss each *Polaski* factor as long as the ALJ recognizes and considers the *Polaski* analytical framework. *Tucker v. Barnhart,* 363 F.3d 781, 783 (8th Cir. 2004). "Although the ALJ may disbelieve a claimant's allegations of pain, credibility determinations must be supported by substantial evidence." *Jeffery v. Sec'y of Health & Human Servs.*, 849 F.2d 1129, 1132 (8th Cir. 1988) (internal citation omitted). "Moreover, the ALJ must make express credibility determinations and set forth the inconsistencies in the record that lead him to reject the claimant's complaints." *Id.* "Where objective evidence does not fully support the degree of severity in a claimant's subjective complaints of pain, the ALJ must consider all evidence relevant to those complaints." *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) (internal citation omitted). In evaluating a claimant's subjective complaints of pain, an ALJ may rely on a combination of his personal observations and a review of the record to reject such complaints. *Lamp v. Astrue,* 531 F.3d 629, 632 (8th Cir. 2009). The ALJ may not solely rely on his personal observations to reject such claims. *Id.* Thus "[s]ubjective complaints can be discounted [by the ALJ] where inconsistencies appear in the record as a whole." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) (citing to *Polaski* opinion).

The court now turns to review the record and the ALJ's decision with the following yardstick in mind that "[claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards*, 314 F.3d at 966 (citing to *Pearsall,* 274 F.3d at 1218). In this case, the ALJ considered claimant's subjective complaints and found her medical impairments could reasonably be expected to cause the alleged symptoms, but concluded her "statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible." AR 17. In reaching this conclusion, the ALJ reviewed at length the objective medical evidence. AR 17-19. This included the conclusion by Dr. Baker that claimant could "interact appropriately [ ] with supervisors, coworkers, and the public" and could "respond appropriately to change in the workplace" (Doc. 17), as well as Dr. Shumaker's conclusion that claimant "is capable [in April 30, 2013] of sedentary full time work" (Doc. 18). The ALJ also considered the consulting doctors' opinions that claimant could perform sedentary work. Doc. 20, 94-95, 107-108. The ALJ considered claimant's daily living activities and social functioning, and found them both mildly impaired, and that she has moderate difficulties with concentration, persistence, and pace. Doc. 15. The ALJ considered claimant's "abl[ility] to do dishes, some cooking and cleaning," "attend[ ] an annual family picnic," baby[sit] her granddaughter four hours a day, three days a week, and help her boyfriend perform packing and unpacking in relation to moving residences, as indicative of claimant's ability to perform more activities than she claimed. AR 14-18. The ALJ also indicated that claimant "has been able to socialize with family and has a boyfriend. AR 20. Finally, the ALJ noted that claimant's involvement in worker's compensation litigation over her injury "certainly has no doubt influenced her actions in this case as far as pursuing work activity other than caring for her granddaughter." AR 19.

The ALJ did not specifically reference the *Polaski* case, but does address the *Polaski* factors. Claimant points out that the ALJ's assertion that claimant's babysitting

11

"would most likely involve lifting of at least 20 pounds" (AR 19) has no support in the record and appears to be pure speculation. I agree. This speculation, however, is of little import because the ALJ placed a ten-pound weight restriction on claimant (Doc. 15) and the 20-pound weight limitation otherwise did not enter into the vocational expert's opinion or the ALJ's decision. Overall, the decision reflects the ALJ properly considered the *Polaski* factors. This court might reach a different credibility finding based on its review of the cold record. But, credibility of a claimant's subjective testimony is primarily for the ALJ, not the reviewing court, to decide. *Pearsall,* 274 F.3d at 1218. If the ALJ gives a good reason for discrediting a claimant's credibility, then the court will defer to the ALJ's judgment "even if every factor is not discussed in depth." *Dunahoo v. Apfel,* 241 F.3d 1033, 1038 (8th Cir. 2001). I find there is substantial evidence to support the ALJ's credibility finding and the assessment is within the zone of choice afforded the ALJ.

In any event, claimant does not take issue with the ALJ's *Polaski* analysis except with respect to the ALJ's consideration of claimant's involvement in worker's compensation litigation as a factor bearing on her credibility. *See Aulston v. Astrue*, 277 Fed. App'x 663, 664 (8th Cir. 2009) (declining to address claims, as waived, when not fully developed by claimant in briefing). Claimant argues that it was improper for the ALJ to consider claimant's worker's compensation litigation in assessing her credibility. Doc. 15, at 5-6; Doc. 17, 1-2. Claimant cited several, non-binding cases suggesting it is inappropriate for the ALJ to consider claimant's worker's compensation litigation in assessing her credibility. The Commissioner argued it was proper for the ALJ to note claimant's involvement in worker's compensation litigation (Doc. 16, at 6-7), but did not cite any cases directly on this issue.

I find this issue much more nuanced and unsettled than claimant's limited citations suggest. First, the Eighth Circuit Court of Appeals has addressed this issue in passing in

two cases. In *Erikson v. Sullivan*, 930 F.2d 654 (8th Cir. 1991), the court reversed an ALJ's decision because the ALJ failed to apply the *Polaski* factors. After explaining a couple reasons why the ALJ's *Polaski* analysis was wanting, the court stated:

> In discounting Erickson's complaints of pain, the ALJ also referred to Erickson's past worker's compensation claims. However, as this is neither evidence of inconsistencies in the record nor of the *Polaski* factors, we question its relevance.

*Erickson*, 930 F.2d at 656. The *Erickson* Court did not explicitly state that a claimant's involvement in worker's compensation litigation had no relevance on the claimant's credibility, nor was the issue squarely before the court. *Erickson*, therefore, serves perhaps as a warning light concerning this issue, but it does not stand for the proposition that an ALJ is prohibited from considering a claimant's litigation-related motivation in assessing a claimant's credibility.

A decade later, the Eighth Circuit addressed the issue again, but again in passing. In *McKinney v. Apfel*, 228 F.3d 860 (8th Cir. 2002), the court affirmed an ALJ's credibility conclusion under the *Polaski* analysis. In recounting the various grounds upon which the ALJ relied in concluding the claimant's pain complaints were not credible, the *McKinney* Court noted that the ALJ considered "the fact that McKinney had reopened a worker's compensation claim." *McKinney*, 228 F.3d at 864. The *McKinney* court did not explicitly state that a claimant's involvement in worker's compensation litigation was relevant to the claimant's credibility, nor was the issue squarely before the court. Accordingly, at most, *McKinney* supports the proposition that one panel of the Eighth Circuit Court of Appeals did not, *sua sponte*, find it improper for an ALJ to consider worker's compensation litigation in assessing a claimant's credibility.

Generally speaking, it is proper for an ALJ to consider whether a claimant has an outside motivation to exaggerate claims. *See Gaddis v. Chater*, 76 F.3d 893, 896 (8th

13

Cir. 1996) (affirming an ALJ's credibility determination that a "strong element of secondary gain" diminished the claimant's credibility). Where, as here, a claimant is involved in litigation where she has a motive to exaggerate the extent of her claimed subjective pain and inability to work, it would appear appropriate that an ALJ could properly consider that motivation, among other evidence, in assessing a claimant's credibility. Several courts, however, have found otherwise. Claimant cites, for example, *Simmons v. Massanari*, 160 F. Supp. 2d 1235, 1242-43 (D. Kan. 2001), where the court found "the ALJ improperly relied upon plaintiff's receipt of worker's compensation benefits to discredit her testimony." *Simmons*, in turn, relied upon the decision in *Hinton v. Massanari*, 2001 WL 744971, at *1 n.1 (10th Cir. 2001), where the court stated consideration of worker's compensation benefits "was improper" and "has no bearing on her credibility." *Hinton*, however, is not persuasive because it was an unpublished decision which expressly stated that it does not serve as binding precedent, and the footnote is *dictum* because the issue was not before the court.

Other courts, however, have reached similar conclusions that it is improper for an ALJ to consider receipt of worker's compensation benefits in assessing a claimant's credibility. *See*, *e.g.*, *Shriver v. Chater*, NO. 94-5214, 1995 WL 454710, at *3 (10th Cir. Aug. 2, 1995) (finding it improper for the ALJ to consider the claimant's receipt of worker's compensation benefits in assessing the claimant's credibility); *Anderson v. Astrue*, No. 09-0971-TC, 2011 WL 165552, at *8 (D. Ore. Mar. 25, 2011) (finding an ALJ's reliance on the claimant's involvement in worker's compensation litigation improper and speculative); *Buchan v. Astrue*, No. 08-4099-JAR, 2009 WL 2176046, at *6 (D. Kan. July 21, 2009) (citing *Stefanopoulos*, and finding it is "error for the ALJ to use the receipt of worker's compensation in his credibility analysis to suggest plaintiff might not be motivated to work"); *Stefanopoulos v. Barnhart*, 183 F. Supp. 2d 1322, 1329 (D. Kan. 2002) (citing *Hinton*, and finding the ALJ improperly considered the

claimant's receipt of funds pursuant to his worker's compensation claim in assessing the claimant's motivation to work). *See also cf. Melton v. Apfel*, No. IP 99-869- C H/G, 2000 WL 680433, at *7 (S.D. Ind. May 25, 2000) (finding it improper for an ALJ to discredit a doctor's testimony merely because the doctor saw the claimant in connection with a worker's compensation claim).

On the other hand, many other courts have found it was proper for an ALJ to consider a claimant's receipt of, or involvement in, worker's compensation litigation in assessing the claimant's credibility. *See*, *e.g.*, *Leech v. Barnhart*, 177 Fed. App'x 225, 228 (3rd. Cir. 2006) (holding "it was not improper for the ALJ to consider Leech's financial interest in her ongoing worker's compensation claim and underlying Social Security disability benefits claim and her possible addiction when making the credibility determination."); *Maurice v. Colvin*, No. 12 Civ. 2114(LGS), 2014 WL 5410004, at *4 (S.D. N.Y. Oct. 23, 2014) (finding it was not improper for the ALJ to consider the claimant's receipt of worker's compensation benefits along with a number of other factors in assessing the claimant's credibility); *James-Parker v Commissioner of Social Security*, No. 1:11-cv-1236, 2013 WL 1150593, at * 6 (W.D. Mich. Mar. 19, 2013) (holding "the ALJ could properly discount plaintiff's credibility based upon secondary gain" from her worker's compensation claim).

In weighing the reasoning of these conflicting cases, I find that it is not improper for an ALJ to consider the possible monetary motivation that arises from a claimant's involvement in worker's compensation litigation in assessing her credibility so long as it is only one of many factors. A claimant seeking worker's compensation logically stands in a better position in that litigation should the Commissioner declare the claimant disabled in whole or in part due to work-related injuries. An ALJ can consider, and should not ignore, the influence possible secondary gain may have on a claimant's credibility. An ALJ may not base a credibility finding on the collection of worker's

compensation alone, and may not discount a disability claim simply on the ground that the claimant is otherwise compensated through worker's compensation. But, an ALJ may properly consider whether a claimant may be motivated to exaggerate symptoms when that claimant stands to benefit not only from a disability finding, but also from that finding's secondary impact on pending worker's compensation litigation. My conclusion here is bolstered in part by the reasoning in *Scdoris v. Barnhart*, 226 F. Supp. 2d 1183, 1188-89 (D. Neb. 2002). In that case, the court found it was not error for the ALJ to consider the claimant's involvement in worker's compensation litigation in assessing his credibility where it was one of many factors, and where testimony about the worker's compensation arose without objection during a hearing where the claimant was represented by counsel. Such is the case here. Claimant was represented by counsel at the hearing and did not object to questions pertaining to her involvement in worker's compensation litigation. AR 40-45.

In summary, I find the ALJ's credibility decision was not improper simply because the ALJ considered the influence of claimant's pending worker's compensation litigation, and was otherwise within the zone of choice afforded an ALJ which this court should not disturb on review.

### B. *Evaluation of the Medical Evidence*

Claimant argues the ALJ's residual functional capacity findings were erroneous because they failed to include limitations on her "need to alternate between standing, sitting, and lying down, which she needed to do based on the pain" and were not supported by substantial evidence as a whole because it did "not include any limitations based on Dr. Baker's findings." Doc. 15, at 10. In particular, claimant argues that Dr. Baker found claimant had a Global Assessment Functioning (GAF) score of 50, which indicates she cannot work. *Id*. The Commissioner argues the ALJ's credibility finding

rejected claimant's assertion that she had to lay down. Doc. 16, at 10 n.1. The Commissioner also argues that the ALJ properly declined to consider Dr. Baker's June 2012 GAF score of 50 because a GAF score may not be a reliable indicator of vocational capacity on its own, and properly discounted Dr. Baker's conclusions because he qualified them. Doc. 16, at 10-11.

The ALJ properly declined to include claimant's assertion that she needs to lay down because of her pain. For the reasons set forth in the prior section, substantial evidence in the record as a whole supports the ALJ's conclusion that claimant's subjective claims regarding severity and duration of pain was not entirely credible. Moreover, there are no objective medical findings that claimant needed to lay down regularly.

The ALJ also properly discounted the one-time GAF score of 50. Claimant repeatedly had a GAF score of 62. Doc. 18-20, 995, 1000, 1004, 1016. A GAF score of 61 to 70 reflects "some mild symptoms or some difficulty in social, occupational, or school functioning but general functioning pretty well." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, p. 32 (4th ed. Text Revised 2000) (DSM IV-TR). In any event, a GAF score has limited value and is of questionable reliability. The new DSM V eliminated the GAF score because of "its conceptual lack of clarity" and "questionable psychometrics in routine practice." DSM V (5th ed. 2013). Nor is there legal authority for the proposition that the ALJ or the court are required to give GAF scores weight. *Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock on a [GAF] score.").

Finally, Dr. Baker qualified his opinion. He stated that claimant's "ability to maintain attention, concentration, and pace for carrying out instructions is likely to be affected from her reported problems with pain but otherwise not." Doc. 432. Thus, Dr.

Baker qualified his opinion regarding both the probability her abilities would be affected ("likely"), and by premising that limitation on claimant's subjective pain complaints. An ALJ may properly discount a doctor's opinion when it is based on a claimant's subjective complaints. *See*, *e.g.*, *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (holding that an ALJ could discount weight afforded a doctor's opinion when it was based largely on the claimant's subjective complaints); *Kirby*, 500 F.3d at 709 (same); *Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005) (same). This is especially so when, as here, the ALJ otherwise thoroughly reviewed the medical record and found it at odds with such a limitation. AR 943, 945, 996, 1000, 1004, 1008, 1013, 1017, 1023, 1055. Accordingly, the ALJ acted within her discretion in discounting the weight of Dr. Baker's qualified opinion.

In summary, I find the ALJ's residual functional capacity findings were supported by substantial evidence in the record as a whole.

## VII.   CONCLUSION

For the reasons set forth herein, and without minimizing the seriousness of claimant's impairments, I RESPECTFULLY RECOMMEND the Court **affirm** the Commissioner's determination that claimant was not disabled and enter judgment against claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal

from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 26th day of May, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa