# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| ANGELA VANDER SCHAAF,<br><br>Plaintiff,<br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. C15-4072-LTS<br><br>**MEMORADUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |

## I. INTRODUCTION

This case is before me on a Report and Recommendation (R&R) by the Honorable C.J. Williams, United States Magistrate Judge. *See* Doc. No. 19. Judge Williams recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Angela Vander Schaaf Social Security disability benefits (DIB) and supplemental security income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act).

Vander Schaaf has filed timely objections (Doc. No. 22) to the R&R and the Commissioner has filed a response (Doc. No. 23). The procedural history and relevant facts are set forth in the R&R and are repeated herein only to the extent necessary.

## II. APPLICABLE STANDARDS

### A. *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th

Cir. 2008)). This is true even if the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B.    *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of*

3

*Bessemer City*, 470 U.S. 564, 573 74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. THE R&R

Judge Williams reviewed the ALJ's credibility determination and evaluation of the medical evidence. Judge Williams correctly explained the standards for evaluating a claimant's credibility as follows:

> When determining residual functional capacity, an ALJ must evaluate the claimant's credibility regarding her subjective complaints. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). In doing so, an ALJ must consider objective medical evidence and any evidence relating to a claimant's daily activities; duration, frequency, and intensity of pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ does not have to discuss each Polaski factor as long as the ALJ recognizes and considers the Polaski analytical framework. *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004). "Although the ALJ may disbelieve a claimant's allegations of pain, credibility determinations must be supported by substantial evidence." *Jeffery v. Sec'y of Health & Human Servs.*, 849 F.2d 1129, 1132 (8th Cir. 1988) (internal citation omitted). "Moreover, the ALJ must make express credibility determinations and set forth the inconsistencies in the record that lead him to reject the claimant's complaints." *Id*. "Where objective evidence does not fully support the degree of severity in a claimant's subjective complaints of pain, the ALJ must consider all evidence relevant to those complaints." *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) (internal citation omitted). In evaluating a claimant's subjective complaints of pain, an ALJ may rely on a combination of his personal

4

> observations and a review of the record to reject such complaints. *Lamp v. Astrue*, 531 F.3d 629, 632 (8th Cir. 2009). The ALJ may not solely rely on his personal observations to reject such claims. Id. Thus "[s]ubjective complaints can be discounted [by the ALJ] where inconsistencies appear in the record as a whole." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) (citing to *Polaski* opinion).

Doc. No. 19 at 10. Judge Williams found that although the ALJ did not specifically reference the *Polaski* decision, he did address the *Polaski* factors. *Id.* at 11. Judge Williams noted that the ALJ reviewed the medical evidence, including a consultative psychological examination report by Michael Baker, Ph.D., and Vander Schaaf's activities of daily living and social functioning (including her ability to do housework, attend a family picnic and babysit). *Id.* Judge Williams also found that the ALJ properly considered Vander Schaaf's involvement with a workers' compensation claim. *Id.* at 11-16. Ultimately Judge Williams determined that the ALJ's credibility assessment was within the "zone of choice" afforded to an ALJ. *Id.* at 16.

Next, Judge Williams found that the ALJ's RFC findings are supported by substantial evidence in the record as a whole. *Id.* at 18. Judge Williams found that the medical evidence does not support Vander Schaaf's contention that she needs to lay down regularly because of pain and that the ALJ was entitled to discredit this complaint. *Id.* at 17. Judge Williams further found that the ALJ properly discounted a one-time Global Assessment of Functioning (GAF) score of 50, noting she repeatedly was assigned a GAF score of 62.[1] *Id.* Finally, Judge Williams found that the ALJ properly evaluated Dr. Baker's opinion. *Id.* at 18.

---

[1] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. *See American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed.) (DSM-IV). A GAF of 41 to 50 indicates the individual has serious

5

## IV. DISCUSSION

### A. *Vander Schaaf's Objections*

Vander Schaaf objects to Judge Williams' findings (1) that the ALJ properly evaluated her credibility and (2) that the RFC is supported by substantial evidence. Doc. No. 22. I will review those issues de novo.

### B. *The Credibility Assessment*

Vander Schaaf contends that the ALJ's credibility assessment is not supported by substantial evidence. She argues that the ALJ improperly relied on her pending workers' compensation claim to discredit her subjective complaints. I disagree. As Judge Williams noted, Vander Schaaf relied on several non-binding cases to argue that it was inappropriate for the ALJ to consider a claimant's workers' compensation litigation in assessing credibility. The Eighth Circuit has addressed the issue in passing in two cases. In *Erikson v. Sullivan*, 930 F.2d 654 (8th Cir. 1991), the court reversed an ALJ's decision due to a failure to apply the *Polaski* factors. In referencing the claimant's workers' compensation litigation the court stated:

> In discounting Erickson's complaints of pain, the ALJ also referred to Erickson's past worker's compensation claims. However, as this is neither evidence of inconsistencies in the record nor the *Polaski* factors, we question its relevance.

*Erickson*, 930 F.2d at 656. I do not find *Erickson's* holding to require that an ALJ must always ignore a claimant's involvement in workers' compensation litigation. Instead, the court held that under the facts of that particular case, nothing about the workers'

---

symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or a serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). *Id.* A GAF score of 61-70 indicates the individual has some mild symptoms (*e.g.*, depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but is generally functioning pretty well and has some meaningful interpersonal relationships. *Id.*

compensation claim appeared to be relevant. By contrast, in *McKinney v. Apfel*, 228 F.3d 860 (8th Cir. 2002), the court affirmed an ALJ's credibility finding that was based, in part, on the claimant's workers' compensation litigation:

> The ALJ referred to the medical evidence, to McKinney's admission that he was able to perform light physical labor, to the absence of side effects resulting from medication, to McKinney's ability to conduct daily activities, to the lack of evidence supporting McKinney's claims of mental impairment, and to the fact that McKinney had reopened a workers' compensation claim. Accordingly, we are satisfied that substantial evidence supports the ALJ's rejection of McKinney's subjective complaints.

*McKinney*, 228 F.3d at 864. *McKinney* illustrates that a claimant's workers' compensation claim is not automatically off-limits when an ALJ evaluates credibility.

Here, the ALJ stated that Vander Schaaf had a pending workers' compensation claim that "no doubt influenced her actions in this case as far as pursuing work activity other than caring for her granddaughter." AR 19. The ALJ noted that the pending claim had not yet advanced to the point of addressing the medical evidence or undertaking a functional capacity evaluation, thus suggesting a motive for Vander Schaaf not to work. *Id*. As Judge Williams explained, it is proper for an ALJ to consider whether a claimant has a motive to exaggerate claims. Doc. No. 19 at 13 (citing *Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir. 1996) (affirming an ALJ's credibility determination that a "strong element of secondary gain" diminished the claimant's credibility)). Moreover, I note that the ALJ's credibility determination was not based solely on Vander Schaaf's pending workers' compensation claim. I find no error with regard to the ALJ's consideration of that claim.

Although the ALJ did not explicitly reference *Polaski*, I agree with Judge Williams that the ALJ nonetheless considered the appropriate factors. In reaching her conclusion, the ALJ considered the medical record, which included statements from Michael Baker, Ph.D., and Grant Shumaker, M.D., that she was able to interact appropriately, respond to changes in the workplace and perform sedentary full time work. AR 17-18, 432, 485.

The ALJ also considered the state agency consultants' opinions that Vander Schaaf could perform sedentary work. AR 20, 94-95, 107-108. Finally, the ALJ considered Vander Schaaf's activities of daily living and social functioning, finding they did not illustrate difficulties as great as those she claims. Vander Schaaf was able to do the dishes, vacuum, attend an annual family picnic and babysit her granddaughter for four hours a day, three days a week. AR 14-18, 51, 53-54. She also reported to Dr. Baker that she could perform her normal routines and drive, and was not driving at the time only because her car broke down. AR 431. These are good reasons for discounting Vander Schaaf's subjective complaints. Because I find no error with regard to the ALJ's credibility determination, I overrule Vander Schaaf's objection to this portion of the R&R.

## C. *The RFC Determination*

### 1. *The ALJ's findings*

The ALJ determined that Vander Schaaf has the following RFC:

> [The claimant can] occasionally and frequently lift and carry up to 10 pounds. The claimant cannot be required to be on her feet more than 2 out of 8 hours. The claimant can sit for 6 out of 8 hours. The claimant can occasionally perform postural work. The claimant cannot perform work on ladders and needs to avoid kneeling, crouching, crawling and overhead reaching with the right arm. The claimant can perform unskilled, svp 1-2, routine, repetitive work.

AR 15-16. In reaching this determination, the ALJ gave significant weight to the opinion of Grant Shumaker, M.D., an independent medical examiner, because it was consistent with the findings of state agency consultants. AR 20. The ALJ also noted that Vander Schaaf's treating physician, Julia Heaton, M.D., provided no opinion as to work-related limitations. *Id.* Finally, the ALJ found that Dr. Baker's opinion, which was based on a consultative examination, was entitled to significant weight. *Id.*

## 2. *Analysis*

Vander Schaaf argues that the ALJ should have included limitations in the RFC based on her alleged need to alternate between standing, sitting and lying down. She also argues that the RFC is flawed in that it failed to account for the low GAF score assigned by Dr. Baker. The Commissioner argues that the RFC is supported by substantial evidence and that Dr. Baker's GAF score does not demonstrate an inability to work.

Based on my de novo review of the record, I find that the ALJ provided good reasons for the weight given to the medical evidence of record and that her RFC findings are supported by substantial evidence. No medical evidence supports Vander Schaaf's contention that she needs to lay down on a regular basis. Further, as explained above, the ALJ provided good reasons for discrediting her subjective complaints. As such, I find no error in the ALJ's decision not to include this limitation in the RFC.

As for the GAF score assigned by Dr. Baker, the Commissioner is correct that a one-time GAF score is not dispositive. While GAF scores may be helpful in determining a claimant's RFC, they are not controlling. *See Halverson v. Astrue*, 600 F.3d 922, 930–31 (8th Cir. 2010) (finding a GAF score may be of considerable help in formulating RFC, but is not essential to RFC's accuracy) (citing *Howard v. Comm'r of Soc. Sec*, 276 F.3d 235, 241 (6th Cir. 2002)); *see also Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock on a [GAF] score."). Here, the ALJ noted that Vander Schaaf repeatedly received GAF scores of 62. AR 20. The ALJ also pointed out that Dr. Baker qualified his opinion by explaining that Vander Schaaf's "ability to maintain attention, concentration, and pace for carrying out instructions is likely to be affected from her reported problems with pain but otherwise not." AR 432. Thus, Dr. Baker acknowledged that this particular limitation was based on Vander Schaaf's subjective reports of pain. As Judge Williams correctly stated, "[a]n ALJ may properly discount a doctor's opinion when it is based on a claimant's subjective complaints." Doc. No. 19

at 18 (citing *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012); *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007); *Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005)). The ALJ's evaluation of Dr. Baker's opinion was not erroneous.

I further find that the ALJ's RFC determination was supported by some medical evidence, as required by the Commissioner's regulations. The ALJ noted that Wade Jensen, M.D., who performed Vander Schaaf's back surgery, indicated that she could return to light work activity. AR 20. Dr. Jensen opined that she could lift 10 pounds frequently, could frequently bend, twist, squat, kneel, climb, drive, grip, pinch, push/pull and reach above shoulder level. AR 1026. Similarly, as noted above, Dr. Shumaker found that Vander Schaaf was capable of full time sedentary work. AR 485. Dr. Baker, the consultative psychological examiner, found that Vander Schaaf was alert and sufficiently oriented, that her recall and memory were adequate, that she had fair concentration, insight and judgment, and that she had no looseness of association in her thought process and no delusional content. AR 431. Dr. Baker reported that Vander Schaaf was able to remember and understand instructions, procedures and locations for routine employment and that she would be able to respond appropriately to changes in the workplace. AR 432.

Based on my de novo review, I agree with Judge Williams that the ALJ's evaluation of the medical evidence and RFC determination is supported by substantial evidence in the record as a whole. I therefore overrule Vander Schaaf's objection to this portion of the R&R.

## V. CONCLUSION

For the reasons set forth herein:

1. Plaintiff Angela Vander Schaaf's objections (Doc. No. 22) to the magistrate judge's report and recommendation are **overruled**;

10

2. I **accept** United States Magistrate Judge Williams' May 26, 2016, report and recommendation (Doc. No. 19) without modification. *See* 28 U.S.C. § 636(b)(1).

3. Pursuant to Judge Williams' recommendation:

   a. The Commissioner's determination that Vander Schaaf was not disabled is **affirmed**; and

   b. Judgment shall enter against Vander Schaaf and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 7th day of September, 2016.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE